# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **WALLACE KELLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) **Case No. 7:14-CV-00336-SLB** |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Wallace Kelley brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income ("SSI"). After review of the record, the parties' submissions, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Kelley applied for SSI on June 16, 2011, alleging a disability onset date of April 19, 2011. (R. 101).[1] The Social Security Administration denied his application on September 8, 2011. (R. 57). He requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 24, 2012. (R. 64-67). The ALJ denied his application on October 11, 2012. (R. 24).

On October 31, 2012, Kelley petitioned the Appeals Council to review the ALJ's decision. (R. 12). On February 7, 2014, the Appeals Council denied his

---

[1] Citations to a document number, ("Doc. __"), refer to the number assigned to each document as it is filed in the court's record. Citations to page numbers in the Commissioner's record are set forth as ("R.__").

request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security. (R. 1). Kelley appealed to this court on February 25, 2014. (Doc. 1).

## II.  STANDARD OF REVIEW

The court reviews *de novo* the Commissioner's conclusions of law and reviews her factual findings to determine whether they are supported by substantial evidence. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). Substantial evidence is "relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (quotation and citation omitted).

## III.  DISCUSSION

### A.  THE FIVE-STEP EVALUATION

The Commissioner follows a five-step sequential evaluation to determine whether a claimant is disabled and eligible for SSI. 20 C.F.R. § 416.920(a). For the purpose of this evaluation, "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 416(i)(1)(A).

**1. Substantial Gainful Activity**

First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity" as defined by the regulations. 20 C.F.R. § 416.920(a)(4)(i); *see id*. § 416.972. If the claimant is so engaged, he is not disabled. *Id*. § 416.920(b). Here, the ALJ determined that Kelley had not engaged in substantial gainful activity since he filed his application on June 16, 2011. (R. 19).

### 2. Severe Impairments

If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether he suffers from a severe impairment or combination of impairments that significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). If the claimant does not have such an impairment or impairments, he is not disabled. *Id*. § 416.920(c). Here, the ALJ found that Kelley had severe impairments of "compression fractures of C7, T11, T12, and L1, and status post open reduction internal fixation of the left clavicle." (R. 19).

### 3. The Listings

If the claimant has severe impairments, the Commissioner determines whether, alone or in combination, they meet the duration requirement and whether they are equivalent to any one of the listed impairments. 20 C.F.R. § 416.920(a)(4)(iii); *see id*. §§ 416.923, 416.925, 416.926. If the impairments are equivalent to one of the listed impairments, the claimant is disabled. *Id*. § 416.920(d). Here, the ALJ found that Kelley's impairments, alone and in combination, were not equivalent to one of the listed impairments. (R. 20).

### 4. Residual Functional Capacity and Past Relevant Work

If the impairments are not equivalent to one of the listed impairments, the Commissioner assesses the claimant's residual functional capacity ("RFC"), which is the most the claimant can do despite the limitations. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(1). She considers all of the claimant's medical impairments in determining the RFC. *Id*. § 416.945(a)(2). Then, she determines whether, considering the RFC, the claimant can perform his past relevant work. *Id*. § 416.920(a)(4)(iv), (f). If the claimant is capable of performing his past relevant work, he is not disabled. *Id*. § 416.920(a)(4)(iv).

Here, the ALJ determined that Kelley had an RFC to perform medium work, limited to lifting and carrying up to 50 pounds occasionally and 25 pounds frequently. (R. 20). He could stand and walk for up to six hours in an eight-hour workday, with no limitations on sitting. (*Id*.). He could only occasionally be exposed to moving hazardous machinery and unprotected heights and could no more than frequently push or pull with his left arm, operate foot controls with his left leg, and reach both in front and overhead on his left side. (R. 20-21). He was incapable of performing his past relevant work. (R. 22).

### 5. Other Work in the National Economy

If the claimant is unable to perform his past relevant work, the Commissioner determines whether, based on his RFC, age, education, and work experience, he can perform other work that exists in substantial numbers in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(1). If the claimant cannot perform other work, he is disabled. *Id*. § 416.920(a)(4)(v). If he can perform other work, he is not disabled. *Id*.

Here, the ALJ consulted a Vocational Expert ("VE") to determine whether jobs existed in the national economy that Kelley could perform based on his RFC, age, education, and work experience. (R. 47-48). The VE testified that an individual with Kelley's limitations and vocational factors could perform the jobs of cook's helper, counter supply worker, or order filler. (R. 48-49). Because the ALJ found that jobs consistent with Kelley's RFC and vocational factors existed in significant numbers, he concluded that Kelley was not disabled. (R. 23).

## B. KELLEY'S CLAIMS

### 1. Credibility of Kelley's Testimony

Kelley argues that the ALJ failed to properly credit his testimony regarding his symptoms. (Doc. 9 at 9-11). He states that the ALJ did not consider his Function Report and evidence of his "very strong work history" in his Work History Report. (*Id*. at 10-11). He asserts that the ALJ should have discussed this evidence on the record. (*Id*. at 11).

To prove a disability based on a claimant's testimony as to his symptoms, the claimant must present evidence of an underlying medical condition; and either objective medical evidence confirming the severity of the symptoms, or evidence showing that the objectively determined medical condition can reasonably be expected to give rise to the symptoms. 20 C.F.R. § 416.929(a); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The ALJ must provide explicit and adequate reasons for discrediting the claimant's testimony as to his symptoms. *Wilson*, 284 F.3d at 1225. If the ALJ does not, the court must accept the testimony as true. *Id*.

When the ALJ determines that an underlying impairment reasonably could be expected to produce the symptoms the claimant describes, he evaluates the intensity and persistence of the symptoms to determine the extent to which they affect the claimant's ability to work. 20 C.F.R. § 416.929(c)(1). Throughout this evaluation, the ALJ considers a range of medical and other evidence, such as evidence of the claimant's daily activities, side effects of medication used to treat the symptoms, and measures the claimant takes to alleviate the symptoms. *Id*. § 416.929(c)(3).

Here, Kelley testified that he (1) had shooting pain in his neck when he turned his head, which he could not do more than an inch; (2) had shooting pain down his left side and leg when he raised his left arm; (3) could not lift more than a coffee cup;

(4) could not hardly move from sitting to standing because of numbness in his hips that shot pain down his legs; (5) had difficulty walking even 100 feet, due to a knee injury; and (6) daily experienced pain at the level of 10 on a scale of 1 to 10. (R. 35-39). His pain medication made him sleepy and dizzy all of the time, and he had to lay down six hours during the day. (R. 40). He had migraine headaches everyday, all day, and was always dizzy and seeing stars. (R. 41). His ankle, neck, and shoulder were always swollen. (R. 39, 41).

Kelley testified that he had two sons, 12 and 3 years old. (R. 43). The younger son was at home with him during the day, while his wife worked from 5:00 a.m. until 1:00 p.m. (*Id.*). The older son got himself out of bed in the morning and rode the bus to school. (R. 43-44).

In a Work History Report, Kelley indicated that, from 1995 to 2000, he worked for Marshall Durbin, where he did "hanging, chicking, and pushing tanks full of birds" to an assembly line. (R. 124, 129). In 2005, he made $68 per day as a laborer for Arley Furniture, where he built furniture, and Cavalier, where he spackled cracks in walls. (R. 124, 127-28). He worked as a mechanic from 2006 to 2011 for Guthrie Trucking, where he earned $60 per day, and from 2006 to 2008, for Taylor Truck Stop, where he earned $64 per day. (R. 124-26).

For these years, his earnings record showed that: in 1995, he earned a total of $1,023; in 1997, he earned $4,887; in 1998, he earned $711; in 1999, he earned $764; in 2000, he earned $6,164; in 2005, he earned $1,850; in 2006, he earned $4,969; in 2007, he earned $13,130; and in the following years he reported no earnings. (R. 112-16).

In a Function Report, he stated that his wife had to dress, shave, and bathe him, prepare his food, and help him to the bathroom. (R. 133). He could not do any house or yard work, due to pain in his back, neck, knee, and hips. (R. 134-35). He reported being left handed and being prescribed a back, neck, and leg brace. (R. 137-38).

The ALJ determined that Kelley's impairments could reasonably be expected to cause his symptoms, but also found that his testimony regarding their intensity, persistence, and limiting effects was not entirely credible. (R. 21). Substantial evidence supports the ALJ's credibility determination, as Kelley's testimony was inconsistent with his treatment history, daily activities, and medical records.

First, he was never diagnosed with or received treatment for migraines, nerve damage, a knee or hip injury, anxiety, or depression. (*See* R. 164-85). Second, he testified that his wife left for work at 5 a.m. every morning, leaving him responsible for his 12-year-old son before he left for school and his 3-year-old son for 8 hours every day. (R. 43).

Third, his medical records did not support the alleged intensity and persistence of his symptoms and severity of impact on his functioning. On November 15, 2007, he visited Dr. Rena Stewart after sustaining a left displaced clavicle fracture and a left radial head fracture in a dirt bike accident. (R. 173-74). Dr. Stewart surgically repaired the fracture, and at a two-weeks post-operative check up, reported that he was healing "beautifully" and had an "amazingly good" range of motion. (R. 172,177-78). He had a forward flexion and abduction to 150 degrees with minimal pain and his elbow had a range from 30 to 130 degrees, with 90 degrees of pronation and supination. (R. 172).

On December 20, 2007, he was injured at work and returned to Dr. Stewart for surgery to repair the left clavicle. (R. 171,175-76). At his six-weeks post-operative check up, Dr. Stewart noted that he had an "excellent" physical exam, with a "full range of motion on all planes," and no tenderness over the fracture. (R. 167).

On April 19, 2011, he was injured again at work when a "coal truck" landed on him, causing compression fractures at T11 and T12, and a fracture to the inferior spinous process of C7. (R. 166). Dr. Steven Theiss treated his injuries. On May 2, 2011, he followed up with Dr. Theiss, complaining of neck and thoracic pain, but denying any significant extremity symptoms. He had a normal gait; could walk on heels and toes; displayed 5/5 muscle strength in his legs, arms, and hips; had intact sensation; and had negative seated and supine straight leg raise tests. (*Id*.). Lumbar and cervical spine x-rays showed normal alignment with no instability, no prevertebral soft tissue swelling, no significant degenerative disk disease, minimal displacement at C7, and unchanged mild anterior wedging from T11 to L1. (R. 182-83). Kelley visited Dr. Theiss again on June 13, 2011, and had a normal gait and intact manual muscle testing in his legs. (R. 164). Dr. Theiss characterized his spinal injuries as "trivial spinal column injuries," not related to his diffuse pain complaints. (*Id*.).

On August 24, 2011, Dr. Samia Moizuddin examined Kelley and found that his neck was normal, he displayed 5/5 muscle strength in all groups, he had no atrophy or abnormal movements, could squat half-way down, and did not use an assistive device. (R. 187-89). His range of motion in his neck, back, knees, shoulders, wrists, elbows/forearms, ankles, and hips was normal with some back pain from hip movement. (R. 190-91). His grip strength and dexterity was also normal. (R. 191).

Based on the above evidence, the ALJ's credibility determination as to the severity and effect of Kelley's symptoms is supported by substantial evidence. Kelley failed to provide objective medical evidence confirming the severity of his symptoms, or evidence showing that his medical condition could reasonably be expected to give rise to his reported symptoms. *See* 20 C.F.R. § 416.929(a); *Wilson*, 284 F.3d at 1225.

The ALJ also sufficiently discussed on the record the evidence before him. While Kelley's Work History Report showed that he performed heavy exertional work when he worked, the evidence did not indicate a "strong work history." (*See* R. 112, 124-29; doc. 9 at 10-11). Past performance of heavy work does not demonstrate that his testimony was credible, and the ALJ was not required to discuss it on the record. This also is true of the Function Report, which contained subjective complaints of his limitations that the ALJ discussed thoroughly on the record. *See* 20 C.F.R. § 416.929(b); (R. 19-22).

### 2. Weight of Chiropractor's Opinion

Kelley argues that the ALJ should have given greater weight to a report by chiropractor Dr. Rene Bowen. (Doc. 9 at 12-16). He also asserts that, because the ALJ rejected Dr. Bowen's opinion, he should have ordered a consultative examination by an acceptable medical source to confirm or deny Dr. Bowen's findings. (*Id*. at 15).

When evaluating an application for SSI, the Commissioner may consider the opinions of "acceptable medical sources," such as physicians, and "other sources," such as chiropractors. 20 C.F.R. § 416.913(a), (d)(1). Opinions of acceptable medical sources inform her decision as to whether the claimant has an impairment. *Id*. § 416.913(a). She gives a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques

9

and is not inconsistent with the other substantial evidence." *Id*. § 416.927(c)(2). Opinions of other sources are relevant only to the severity of the impairment and how it affects the claimant's ability to work. *Id*. § 416.913(d). In weighing these opinions, the Commissioner considers whether, and the extent to which, the source examined and/or treated the claimant, the evidence supporting the opinion, whether the opinion is consistent with the record, and the source's specialty. *Id*. § 416.927(c). She considers an RFC assessment done by a non-examining state agency physician as relevant to what the claimant can do. *Id*. § 416.913(c).

While the ALJ has a duty to develop a full and fair medical record for the 12 months prior to the filing date, the claimant is responsible for providing evidence of his disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). When a claimant is not represented by counsel, the ALJ has a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Cowart v. Schweiker*, 662 F.2d 732, 735 (11th Cir. 1981) (quotation omitted). The ALJ need not order a consultative examination when the record contains sufficient evidence to allow him to make an informed decision. *Ingram*, 496 F.3d at 1269.

Here, Kelley's attorney hired Dr. Bowen for the purpose of the disability determination. (R. 203; doc. 9 at 12). She examined Kelley on September 20, 2012, and noted that he had a decreased range of motion in his neck, tenderness and muscle tension in his spine, limited motion in his low back, swelling and tenderness in his left knee, muscle tension in his pelvic region, and visible malposition of his sternum. (R. 203). Based on her reading of his x-rays, she concluded that his condition was permanent, due to the degree of degenerative changes and compression to his injured spine and shoulder. (R. 203-04).

The ALJ explained the weight he gave Dr. Bowen's statement, saying that Dr. Bowen was not a medical source and "offered no medical source opinion to support such work-related limitations of function." (R. 22). Agency regulations and substantial evidence support the weight afforded to Dr. Bowen's statement by the ALJ. First, because Dr. Bowen was a chiropractor, and not an acceptable medical source, her opinion was not entitled to controlling weight and was relevant only to what Kelley could do. *See* 20 C.F.R. §§ 416.913(c)(2) & (d), 416.927(c)(2). Second, while Dr. Bowen examined Kelley, she based her report on one examination and she did not treat him. *See id*. § 416.927(c)(2).

Third, her one-time evaluation was not supported by other medical evidence and was inconsistent with the medical records of Kelley's treating physicians and surgeons. *See id*. § 416.927(c)(2)-(4). For example, Dr. Bowen's examination was the only record of any significant knee or hip injuries. (*See* R. 164, 166-67, 172, 177-78, 182-83, 203). Her report also was inconsistent with the report of Dr. Moizuddin, who examined Kelley and found that his range of motion and strength was normal all over. (R. 187-91). It also was inconsistent with an RFC determination by a non-examining physician, who determined that Kelley could occasionally lift 50 pounds and frequently lift 25 pounds; could stand/walk about 6 hours in an 8-hour workday and could sit for the same; had unlimited pushing and pulling abilities; and had no postural or manipulative limitations. (R. 193-96); *see* 20 C.F.R. § 416.913(c).

Further, the ALJ did not err in failing to order further evaluation based on Dr. Bowen's examination. Kelley was represented by counsel and the record contained sufficient evidence to allow the ALJ to make an informed decision. *See Ingram*, 496 F.3d at 1269; *Cowart*, 662 F.2d at 735.

## IV. CONCLUSION

Based on the reasons set forth above, the decision of the ALJ, as adopted by the Commissioner, denying Kelley's claim for SSI is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 20th day of July, 2015.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE